## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CELIA BOEHMER and RICHARD BOEHMER, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 09-CV-318-JHP<br>) |
| STATE FARM FIRE AND CASUALTY COMPANY, | )<br>)<br>) |
| Defendants. | ) |

### ORDER

Before the Court is Plaintiffs Celia and Richard Boehmer's Motion To Remand and Brief In Support [Doc. No. 9], Defendant's Response in Opposition To Plaintiffs' Motion [Doc. No. 10], and Plaintiffs' Reply To Defendant's Response [Doc. No. 14]. For the reasons set forth below, the Court finds that federal jurisdiction is proper. Plaintiff's Motion is therefore DENIED.

### Background

This litigation arises from a fire that occurred in February, 2008, which destroyed the home and personal possessions of Plaintiffs Celia and Richard Boehmer. The Plaintiffs were covered under a policy of insurance issued by the Defendant, State Farm Fire and Casualty Company. After a dispute arose regarding payments made under the insurance policy, the Plaintiffs filed this action in the District Court for Wagoner County for breach of contract, a breach of the implied duty of good faith and fair dealing, and punitive damages. After conducting discovery in the state court proceeding, the Defendant filed a Notice Of Removal stating this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 since the parties are diverse and the requisite amount in controversy has been satisfied. The Plaintiffs filed a Motion requesting this Court remand this

1

action back to the District Court for Wagoner County on the grounds the Defendant has failed to prove the requisite amount in controversy exists.

**Discussion**

"Except as otherwise expressly provided . . . any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States . . . embracing the place where such action is pending." 28 U.S.C. § 1441(a). The Defendant contends this Court has original jurisdiction over this action based upon 28 U.S.C. § 1332, which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a)(1). Here, there is no dispute that the Plaintiffs are citizens of Oklahoma, while the Defendant is a corporation with its principal places of business in Illinois. *See* 28 U.S.C. § 1332(c)(1) ("For the purposes of [§ 1332] . . . a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."). Thus, the Court is left to determine whether the amount in controversy exceeds $75,000.

In *Laughlin v. Kmart Corp.*, the Tenth Circuit set forth the framework by which district courts in this circuit should measure whether the amount in controversy requirement has been satisfied:

> The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal. The burden is on the party requesting removal to set forth, in the notice of removal itself, the 'underlying facts supporting [the] assertion that the amount in controversy exceeds [$75,000].' Moreover, there is a presumption against removal jurisdiction.

2

50 F.3d 871, 873 (10th Cir. 1995)(citations omitted) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992)). As *Laughlin* makes clear, the amount in controversy "must be affirmatively established on the face of either the petition or the removal notice." *Id*. The Tenth Circuit has since clarified this standard in *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008) stating "the defendant must affirmatively establish jurisdiction by proving jurisdictional *facts* that made it *possible* that $75,000 was in play. . ." (Emphasis in the original) The Court held that a proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence. *Id*. Once the facts have been established, "uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal." *Id*.

The Plaintiffs in this case pled breach of contract damages in excess of $10,000.00, bad faith damages in excess of $10,000.00, and punitive damages in excess of $10,000.00. [Doc. No. 2, Exhibit 1] In order to determine whether the Plaintiffs are seeking an amount in excess of $75,000.00, the Defendant served Requests For Admissions on the Plaintiffs. Although the Plaintiffs responded to the Defendant's requests, their responses were evasive and replete with objections and unresponsive answers. The Defendant then took the deposition of Plaintiff Celia Boehmer in an attempt to obtain information regarding the damages being sought. Although during Mrs. Boehmer's deposition she was generally evasive in her responses, she made several statements which provides this Court insight into the amounts actually sought in this litigation. Mrs. Boehmer testified:

> Q: Let me ask you some general questions, then Mrs. Boehmer, about the – about the – your – some of the complaints you had with the personal property without getting into the exact specifics. But would you agree with me that you believe that

3

| | | |
|---|---|---|
| | | you are owed the remainder of the policy limits on the Coverage B? |
| A: | | Yes. |
| Q: | | Okay. Would – do you believe that you're owed more than the policy limits on the Coverage B issue? |
| A: | | Yes. |

. . .

| | | |
|---|---|---|
| Q: | | Do you believe that it should have been a policy limits payment? |
| A: | | What's that mean? |
| Q: | | Up to the limits of the contact? |
| A: | | I think I certainly should have been paid what I was insured for. |
| Q: | | So up to the policy limits; correct? |
| A: | | Whatever I was insured for that would rebuild that house. |
| Q: | | Okay. |
| A: | | The replacement cost of that house. |
| Q: | | Okay. And you -- |
| A: | | And the replacement cost of the contents. |
| Q: | | And you testified earlier that you believe the house was actually worth about 200; Correct? |
| A: | | Two to – or more. |

[Doc. No. 2, Exhibit 3]

In April, 2009, State Farm wrote to the Boehmer's advising them of the policy benefits still remaining in light of the fact $146,468.30 had already been paid under the part of the policy allotted for rebuilding costs. [Doc. No. 2, Exhibit 4] Under the policy, the base limits of the Dwelling Coverage was $159,751.00 with the possibility of an extension of up to an additional $31,080.00. Based on the available coverage and the amounts already paid by State Farm, an additional $45,238.70 in Coverage A (Dwelling) policy limits is still available. [see Doc. No. 2, Exhibits 4 and 5] Although the Plaintiffs contend there is no proof this is the specific amount they are claiming in this litigation, the statements by Mrs. Boehmer that she is looking to obtain what she was insured for are sufficient for this Court to establish that the Plaintiffs have placed at least $45,238.70 of

4

remaining limits under Coverage A of the policy at issue for purposes of establishing subject matter jurisdiction.

The Plaintiff also indicated in her deposition that she is seeking what she was insured for under the insurance policy for the replacement costs of her personal property. According to a letter from State Farm to the Boehmers in December, 2008, the items submitted on the inventory documenting the personal property the Plaintiffs lost totals $169,666.17. [Doc. No. 2, Exhibit 6] The letter indicates State Farm made a payment to the Boehmers in the amount of $77,349.56, leaving $25,361.79 of available coverage under the Personal Property section of the insurance policy. [Doc. No. 2, Exhibits 5 and 6] This Court finds this evidence sufficient to establish the $25,361.79 remaining under the Personal Property section of the policy is at issue for purposes of determining the amount in controversy.

Mrs. Boehmer further testified that she purchased a fifth wheel trailer for somewhere between $50,000 and $56,000.00 which the Plaintiffs are currently living in. When asked whether the amount paid for the trailer is in dispute in this litigation she testified:

> Q: Is that part of the reason that you're suing State Farm for, is the – having to purchase this RV for $52,000?
> A: Well, I wouldn't be living in the RV if I had my home back.
> Q: So is that a yes?
> A: Okay.
>
> [Doc. No. 2, Exhibit 3]

The Plaintiffs now argue they have not specified, and the Defendants cannot prove, a specific amount which the Plaintiffs are claiming in relation to the trailer. However, under *McPhail,* the Defendant's duty is to establish jurisdictional facts which make it *possible* that an amount in excess of $75,000 is in play. *Id.* at 954. The Plaintiffs cannot state they are making a claim related to the trailer valued at approximately $50,000.00, but fail to state how much of the cost of the trailer they

will be seeking in an effort to remain in state court.

Mrs. Boehmer was asked about damage to her property she claims was caused by Service Master who was contracted by State Farm. She claims the damages caused by Service Master total more than $10,000.00 although she would not definitively state whether these claims are at issue in this litigation.[1] She was also questioned about how much she was seeking in compensation for her bad faith claims. While Mrs. Boehmer never placed a dollar amount on this claim, she stated that she would not be happy if a jury were to award her $50,000.00 as compensation for her bad faith claim.[2] The Defendant asks us to construe this as evidence that the Plaintiffs are seeking in excess of $50,000.00 for the bad faith claim. The Plaintiffs contend this is a misstatement of Mrs. Boehmer's testimony and that Mrs. Boehmer never actually stated that they were seeking a specific amount.

The Court finds it unnecessary at this point to make a determination as to the amount of

---

[1] Mrs. Boehmer stated:
Q: And State Farm should be responsible for what – what Service master did to your property correct?
A: For the labor they contracted.
Q: Okay. What does that mean? Is that a yes or a no? Are they responsible for the damage caused to your property? We're not talking about what the labor is.
A: It all funnels down, basically, that would be it because they hired service master.
. . .
Q: What amount of damages has Service Master caused you?
A: In dollar value?
Q: Yeah.
A. I haven't added it up.
Q: It is more than $10,000.00?
A. Oh, heavens. By a long shot.
[Doc. No. 2, Exhibit 3]

[2] Mrs. Boehmer testified:
Q: But you wouldn't be mad if the jury came back with $50,000.00; right?
A: I don't know.
. . .
Q: No, I'm not asking you – let me just ask my question. Just listen to my question. I'm not asking you whether or not you have a number. I'm asking you whether you would be satisfied with the number 50,000.
A: Well, I guess if you – I guess if you want a yes or no, pat answer, the answer's going to be no.

money at issue in the litigation regarding to the damages allegedly caused by Service Master or the claims of bad faith. Based on the other facts presented, the Defendants have clearly shown that the Plaintiffs are seeking in excess $75,000.00 sufficient to remain in federal court.[3]

## **Conclusion**

For the reasons stated herein, the Court retains jurisdiction over this case, and Plaintiffs' Motion is DENIED.

IT IS SO ORDERED this 10th day of November, 2009.

James H. Payne
United States District Judge
Eastern District of Oklahoma

---

[3] Taking the Petition on its face the Plaintiffs pled punitive damages in excess of $10,000.00 and bad faith damages in excess of $10,000.00. Mrs. Boehmer admitted the Plaintiffs are seeking what they are entitled to under the policy which this Court interprets are being at least the policy limits for the cost to rebuild the house ($45,238.70) and for the loss of personal property ($25,361.79). Therefore, this Court notes that the Defendant satisfied its burden of establishing the amount in controversy even without the additional disputed evidence regarding the Service Master damages, the fifth wheel trailer, or the additional testimony regarding bad faith damages.